IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| DENISE SUE PETROSINO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:14-CV-01907-JO |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of | ) | OPINION AND ORDER |
| Social Security, | ) | |
| | ) | |
| _____Defendant._____ | ) | |

JONES, J.,

Plaintiff Denise Sue Petrosino appeals the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Petrosino filed an application for disability insurance benefits under Title II, alleging disability beginning October 1, 2007. At her disability hearing, Petrosino amended her disability onset date to January 1, 2010. The ALJ required an additional consultative physical evaluation, after which Petrosino was given a supplemental administrative hearing. Admin. R. 15.

The ALJ applied the five-step analysis outlined in the regulations to determine whether Petrosino was disabled. Admin. R. 17-26. The ALJ found that Petrosino's ability to work was adversely affected by degenerative disc disease of the lumbar spine, chronic right knee pain with degenerative changes, obesity, mild hypertension, limited range of motion of the neck, and

1- OPINION AND ORDER

osteoarthritis of the left knee with mild degenerative joint disease.  Admin. R. 17.  The ALJ determined that, despite these impairments, Petrosino retained the residual functional capacity ("RFC") to perform light work, involving no more than one hour of standing or walking in an eight-hour workday, during which she could alternate between positions every ten minutes, and could not be expected to maintain a reasonable pace on uneven or rough terrain. Petrosino could work seated for an unlimited period of time with normal work breaks and could occasionally climb stairs and ramps.  The ALJ identified additional limitations in postural activities, use of the feet bilaterally, reaching, manipulation, and environmental exposure such as heights, moving machinery, temperature, and so forth.  Admin. R. 18-19.  The vocational expert ("VE") testified that a person with Petrosino's RFC could perform unskilled occupations such as production assembler, electronics worker, and parking lot cashier, representing a combined total of 1,212,000 jobs in the national economy.  Admin. R. 25, 68.  The ALJ concluded that Petrosino had failed to establish that she was disabled within the meaning of the Social Security Act. Admin. R. 26.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson,* 359 F.3d at 1193; *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995).

2- OPINION AND ORDER

## DISCUSSION

### I.    Claims of Error

Petrosino contends the ALJ failed to accurately assess her RFC because he did not fully credit her subjective statements about the severity of her limitations. Additionally, Petrosino contends that the ALJ erred in his step five finding, because the VE diverged from the Dictionary of Occupational Titles without adequate explanation.

### II.    Credibility Determination

In her application papers, Petrosino alleged that she had constant pain in her lower back, hips, and lower extremities. Admin. R. 19, 297. She claimed that she could no longer spend as much time with her grandchildren or go camping because of the pain. Admin. R. 19, 274. Additionally, Petrosino claimed that she experienced difficulty with household tasks, such as cleaning and making beds, and that she sometimes needed help getting dressed and preparing meals. Admin. R. 270, 272. At the first hearing, Petrosino testified that she could walk approximately one hundred yards, she could sit for five minutes at most, and that she spent two to three hours per day lying down. Admin. R. 52-53, 62. At the supplemental hearing, Petrosino testified that her back and knee conditions had gotten progressively worse. She also stated that she was in bed for three days after her first hearing, and that the car ride to the hearing and the act of sitting during the hearing increased her symptoms. Admin. R. 35-37.

The ALJ found that Petrosino had medically determinable impairments that could reasonably be expected to produce some of her alleged symptoms. Admin. R. 20. Furthermore, as reflected in the RFC assessment, the ALJ believed that Petrosino's pain significantly limited her ability to perform basic work activities such as lifting, standing, walking, climbing, postural

activities, and so forth.  Admin. R. 18.  The ALJ narrowed Petrosino's RFC by significantly limiting the amount of time she could be expected to engage in each of these activities.  Admin. R. 18-19.

Because the ALJ found that Petrosino had medically determinable impairments that could reasonably be expected to produce some degree of pain and did not identify affirmative evidence of malingering, the ALJ was required to assess the credibility of Petrosino's statements about the intensity, persistence, and limiting effects of her impairments.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

The ALJ determined that Petrosino's statements about the severity and limiting effects of her symptoms less than fully credible.    Admin. R. 20.  An adverse credibility determination must include specific findings supported by substantial evidence and a clear and convincing explanation of the rationale.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen*, 80 F.3d at 1281-82 (9th Cir. 1996).   The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements.  *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *5.

The ALJ's decision demonstrates that she considered all the evidence relating to the proper factors for evaluating Petrosino's credibility. She found that the objective medical evidence did not suggest Petrosino's allegations of total disability. Admin. R. 23. For example, on December 1, 2011, Petrosino had an appointment with an orthopedic specialist, Dr. Jeffrey Feinblatt, regarding her knee pain. Dr. Feinblatt found that Petrosino could ambulate without an antalgic gait, she could climb onto the examining table without significant difficulty, and she had some tenderness, crepitus, and grind. He administered a steroid injection and prescribed physical therapy. Admin. R. 21, 408. Dr. Feinblatt examined Petrosino again on July 2, 2012 and determined that Petrosino had no effusion, good range of motion, no significant joint line tenderness, and stable ligaments. Admin. R. 421. A physical examination performed on July 5, 2012 revealed that Petrosino "moves all extremities without difficulty." Admin. R. 22, 446.

Additionally, on December 29, 2012, Petrosino had a consultative physical examination with Dr. Ellison. Dr. Ellison reviewed an MRI of her spine, which showed degenerative changes in the lumbar region, including moderate to marked disc space narrowing, a small to moderate disc protrusion, and a moderate bulging disc, but with no nerve root displacement or compression. Admin. R. 385, 449. An x-ray of the lumbar spine revealed mild arthropathy. An MRI of Petrosino's knee showed osteoarthritic changes in the lateral compartment of the right knee and an abnormal signal consistent with a meniscal tear. Admin. R. 384, 388, 449. On physical examination, Dr. Ellison found that Petrosino's back was tender to the right of L5-S1, that she had mild right scoliosis, mottled erythema of her skin, and that her range of motion was decreased. However, she had no arthritic stigmata, and her knees were unremarkable with no crepitation, effusion, or remarkable tenderness. While Petrosino walked with an antalgic gait,

she had normal coordination, muscle strength, and muscle tone. Admin. R. 22, 450. Based on these findings, it was reasonable for the ALJ to conclude that the objective medical evidence was not consistent with the debilitating limitations Petrosino claimed.

The ALJ also found that Petrosino's treatment history did not suggest the extreme symptoms she claimed. Admin. R. 20. Since her amended onset date, Petrosino has only received conservative treatment with pain medications and infrequent steroid injections. Admin. R. 20-21. When a claimant alleges debilitating pain but receives only conservative treatment, this supports an adverse inference as to the claimant's statements about the severity or intensity of the symptoms. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007).

In addition, conservative treatment with medications suggests that the medications are effective. Indeed, Petrosino's treatment notes indicate that she was doing "significantly better" with medication. Admin. R. 447. After receiving a corticosteroid injection for her right knee in 2012, for example, treatment notes indicate that the "symptoms that she was having previously are gone." Admin. R. 411. Treatment notes from another office visit on May 15, 2012 indicate that medication has "helped her pain and her mood." Treatment notes from July 5, 2012 similarly indicate that "for the most part [medication] controls her symptoms." Admin. R. 425, 445. Impairments that are effectively controlled by medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006). Therefore, Petrosino's treatment history supports an adverse credibility determination regarding the claimed limiting effects of her symptoms.

Finally, the ALJ considered Petrosino's daily activities. Admin R. 23. In her function report, Petrosino reported a fairly broad range of activity, including taking her husband to and

from work, dusting, vacuuming, doing laundry and going to the store a few times per week, preparing lunches and dinners, and walking the dog a few times per week. Admin. R. 23, 271-274. While these activities are not equivalent to full time work, the ALJ reasonably concluded that Petrosino's daily activities were inconsistent with the limitations she claimed and with her claim of total disability.

The ALJ's findings are supported by substantial evidence in the record and are sufficiently specific for me to conclude that the ALJ did not arbitrarily reject Petrosino's subjective statements. His reasoning is clear and convincing, and the credibility determination will not be disturbed. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

## III.    Step Five Finding

The ALJ also properly relied on a vocational expert ("VE") in his step five finding. Petrosino argues that the VE diverged from the Dictionary of Occupational Titles ("DOT") without adequate explanation. Pl. Opening Brief at 5. Social Security Ruling ("SSR") 00-4p requires an ALJ to ask the VE if the evidence he or she provides is consistent with the DOT and to obtain a reasonable explanation for any apparent conflict. *Massachi v. Astrue,* 486 F.3d 1149, 1152-53 (9th Cir. 2007).

Here, the ALJ specifically asked the VE if all of the VE's testimony was in accordance with the DOT. The VE answered "yes, except for I've otherwise stated regarding no light work exertion levels assigned to the three sample occupations I've just testified to." Admin. R. 68. The VE explained that the occupations of hand packager, electronics worker, and parking lot cashier were all assigned a light work exertional level, principally because they were all performed standing on one's feet. However, during the last ten to twelve years, these

occupations have been performed either sitting or standing, and are therefore consistent with the ALJ's hypotheticals. Admin. R. 68. Thus, the ALJ properly inquired and obtained from the VE a reasonable explanation for the apparent conflict between the VE's evidence and the DOT. Accordingly, the ALJ did not err in relying on the VE for his step five finding.

<u>CONCLUSION</u>

Petrosino's assignments of error cannot be sustained. Accordingly, the Commissioner's final decision is AFFIRMED.

DATED this _26_ day of January, 2016.

Robert E. Jones, Senior Judge
United States District Court